Filed 4/29/14

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| GREGORY SAFFER, | B246412 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC415844) |
| v. | |
| JP MORGAN CHASE BANK et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Michael L. Stern, Judge. Judgment vacated.

Shegerian & Associates and Carney R. Shegerian for Plaintiff and Appellant.

Jackson Lewis, Mark R. Attwood and Sherry L. Swieca for Defendants and Respondents.

_____

# INTRODUCTION

Plaintiff and appellant Gregory Saffer worked for Washington Mutual Bank (WaMu) between May 2007 and January 2008. In September 2008, WaMu failed. In short order, the Federal Deposit Insurance Corporation (FDIC) was appointed as receiver for the bank, and JP Morgan Chase Bank, N.A. (JPMC) purchased some of WaMu's assets and liabilities. The FDIC published notices informing creditors that claims against WaMu had to be submitted to the FDIC by the end of December 2008. In June 2009, Saffer filed suit against WaMu, "Chase Manhattan Bank," his former supervisor at WaMu, and WaMu's former CEO. The suit alleged the defendants constructively discharged Saffer in violation of public policy and in breach of express or implied employment contracts. JPMC successfully compelled the suit to arbitration. Once in the arbitral forum, JPMC moved to dismiss the action. JPMC asserted neither the arbitrator nor any court had subject matter jurisdiction to adjudicate Saffer's claims because he failed to exhaust his administrative remedies pursuant to the Financial Institutions Reform, Recovery and Enforcement Act of 1989, 12 U.S.C. § 1811, et seq. (FIRREA).[1] The arbitrator agreed and dismissed the case. The trial court subsequently confirmed the arbitration award.

Saffer now appeals the order compelling binding arbitration and the order confirming the arbitration award. Saffer contends the arbitration agreement was unenforceable. He also argues the arbitrator's award should have been vacated because the arbitrator substantially prejudiced his rights by denying him discovery, and exceeded her powers by dismissing the case without a hearing on the merits. JPMC contends no court, including this court, has subject matter jurisdiction to entertain Saffer's claims, and his complaint should accordingly be dismissed.

---

[1] All further undesignated statutory references are to FIRREA.

We conclude Saffer's failure to timely comply with the mandatory administrative exhaustion requirements of FIRREA created a jurisdictional bar to his claims. For that reason we vacate the judgment and remand to the trial court with directions to enter an order of dismissal against Saffer for lack of subject matter jurisdiction.

## FACTUAL AND PROCEDURAL BACKGROUND

Saffer began working for WaMu in late May 2007 as a mortgage loan consultant. At some point near the beginning of his employment, Saffer signed a "Binding Arbitration Agreement." In the agreement, Saffer and WaMu agreed "that arbitration shall be in lieu of any and all lawsuits or other civil legal proceedings relating to [his] employment."

In January 2008, Saffer's employment with WaMu ended.

In September 2008, the Office of Thrift Supervision seized WaMu and appointed the FDIC as the bank's receiver. At essentially the same time, the FDIC sold certain of WaMu's assets and liabilities to JPMC.[2]

On October 1 and October 31, 2008, the FDIC published notices in the Wall Street Journal informing creditors of WaMu that any claims against WaMu had to be submitted in writing to the FDIC by December 30, 2008, the "bar date." The notices warned: "Under federal law, with certain limited exceptions, failure to file such claims by the Bar Date will result in disallowance by the Receiver, the disallowance will be final, and further rights or remedies with regard to the claims will be barred. 12 U.S.C. Section 1821 (d)(5)(C)(d)(6)."

In June 2009, Saffer filed suit against WaMu, "Chase Manhattan Bank," the former CEO of WaMu, and his former WaMu supervisor, Susan Wolf. Saffer asserted claims for wrongful termination in violation of public policy; breach of express and implied-in-fact contracts not to terminate employment without good cause; breach of the

---

[2] On October 1, 2013, we granted JPMC's unopposed request that we take judicial notice of several facts which are matters of public record regarding the receivership of WaMu and the FDIC's published notices to WaMu creditors. (Evid. Code, § 452, subd. (h).)

3

implied covenant of good faith and fair dealing; failure to pay wages in violation of the Labor Code and Industrial Welfare Commission Work Orders; false representations and fraudulent inducement; and negligent hiring, retention, and supervision. The complaint alleged Saffer refused to engage in "fraudulent schemes aimed to defraud clients," WaMu and Chase Manhattan Bank constructively discharged him in retaliation, and all defendants negligently hired, retained, or supervised employees who illegally retaliated against him. The complaint further alleged WaMu and Chase Manhattan Bank breached an oral agreement not to terminate him except for good cause, and did not pay all wages due to him. The complaint asserted the defendants, including Wolf, knowingly made false representations to him about WaMu's financial position to induce him to accept employment with WaMu.

In July 2009, JPMC answered the complaint, identifying itself as "JP Morgan Chase Bank, N.A., as acquirer of certain assets and liabilities of Washington Mutual Bank from the FDIC acting as receiver." Wolf subsequently also answered the complaint.[3] In October 2009, JPMC filed a petition to compel arbitration. Saffer opposed the petition, arguing he was fraudulently induced to sign the agreement, and it was unenforceable due to procedural and substantive unconscionability. Following an evidentiary hearing, the trial court granted the petition to compel arbitration in April 2010.

The parties proceeded to arbitration under the auspices of the American Arbitration Association. The record does not reveal what took place over the next two years. In June 2012, JPMC informed the arbitrator and Saffer it would move to dismiss the complaint for lack of subject matter jurisdiction, based on FIRREA. In response, Saffer noticed the deposition of JPMC's person most knowledgeable regarding FIRREA. JPMC objected to the notice and sought a protective order preventing the deposition, which the arbitrator issued. In August 2012, JPMC moved to dismiss the complaint,

---

[3] We hereafter include Wolf when using the shorthand "JPMC."

4

arguing Saffer's failure to exhaust administrative remedies with the FDIC in accordance with FIRREA barred him from pursuing his claims in the arbitration or in any court.

In September 2012, Saffer filed a claim with the FDIC. He also opposed JPMC's motion to dismiss, arguing FIRREA was not applicable because he never received proper notice of the FDIC's receivership of WaMu. He further contended the time to file a claim with the FDIC should be equitably tolled.

In November 2012, the arbitrator concluded the court and the arbitrator lacked subject matter jurisdiction to hear Saffer's claims and dismissed the case. Saffer subsequently filed a motion to vacate the arbitration ruling in the superior court. Saffer contended his rights were substantially prejudiced by the arbitrator's refusal to allow discovery to determine whether the FDIC could have resolved his claims. He further argued the arbitrator should have waited until the FDIC issued a response to his claim. JPMC opposed the motion, arguing that neither the arbitrator nor the courts had jurisdiction to entertain Saffer's claims. However, instead of asserting the trial court should dismiss the action, JPMC contended there was no basis to vacate or review the arbitrator's award and it should be confirmed. In December 2012, the trial court confirmed the arbitrator's award. This appeal followed.[4]

---

[4]     Saffer filed his notice of appeal after the trial court entered an order denying his motion to vacate the arbitration award and confirming the award. However, no judgment was entered on the order at that time, making the appeal premature. (*Cinel v. Christopher* (2012) 203 Cal.App.4th 759, 766; *Cummings v. Future Nissan* (2005) 128 Cal.App.4th 321, 326-327.) On November 12, 2013, we informed the parties of the absence of an appealable order or judgment in the record, and invited them to either augment the record with a judgment, or file letter briefs on the issue of this court's jurisdiction to entertain the appeal. On November 27, 2013, appellant augmented the record with a judgment entered nunc pro tunc. We therefore treat Saffer's notice of appeal as filed immediately after entry of judgment. (Cal. Rules of Court, rule 8.104(d).)

5

**DISCUSSION**

**I.    The Case Must Be Dismissed for Lack of Subject Matter Jurisdiction**

On appeal, Saffer contends the trial court erred in granting JPMC's petition to compel arbitration and subsequently in confirming the arbitration award. JPMC disagrees, but also contends neither the trial court, nor this court has subject matter jurisdiction to entertain any aspect of Saffer's claims. Subject matter jurisdiction may be raised for the first time on appeal. (*Totten v. Hill* (2007) 154 Cal.App.4th 40, 46 (*Totten*).) In addition, an alleged lack of subject matter jurisdiction must be addressed whenever it comes to a court's attention. (*In re Gloria A.* (2013) 213 Cal.App.4th 476, 481; *Totten, supra*, at p. 46.) A respondent may raise the issue in a respondent's brief. (*Totten*, *supra*, at pp. 46-47.)

Saffer's first argument is that the trial court erred in compelling him to arbitrate his claims. However, if indeed the courts of this state lack subject matter jurisdiction over Saffer's claims, any issues regarding arbitrability are moot; even if the arbitration agreement was unenforceable, the trial court would still lack the ability to adjudicate his claims. Thus, we independently consider JPMC's jurisdictional challenge.[5] We conclude the action must be dismissed due to a lack of subject matter jurisdiction, resulting from Saffer's failure to timely exhaust his administrative remedies with the FDIC as required by FIRREA.

---

[5]    We note that in at least two unpublished federal district court decisions, courts have refused to allow arbitration to proceed when the claims related to the actions or omissions of a failed financial institution, and the plaintiffs had not yet exhausted mandatory administrative remedies under FIRREA or a similar statute. (*Multibank 2010-1 SFR Venture LLC v. Saunders* (D.Nev. Nov. 14, 2011, No. 2:11-CV-1245 JCM (CWH)) 2011 WL 5546960 [enjoining arbitration against purchaser of failed bank's assets where plaintiffs had not first exhausted administrative remedies pursuant to FIRREA]; *NCUA Bd. v. Lormet Cmty Fed. Credit Union* (N.D.Ohio Nov. 18, 2010, No. 1:10 CV 1964) 2010 WL 4806794 [concluding claims falling within the purview of the Federal Credit Union Act, which has limitations on judicial review nearly identical to those of FIRREA, may not be arbitrated; defendant could not avoid administrative claims procedure by relying on an arbitration provision].)

## A. FIRREA Background

Under FIRREA, the FDIC has "authority to 'act as receiver or conservator of a failed institution for the protection of depositors and creditors.' [Citation.] [FIRREA] provides detailed procedures to allow the FDIC to consider certain claims against the receivership estate, *see* 12 U.S.C. § 1821, (d)(3)-(10), 'to ensure that the assets of a failed institution are distributed fairly and promptly among those with valid claims against the institution, and to expeditiously wind up the affairs of failed banks,' [Citation]. [¶] FIRREA requires that a plaintiff exhaust these administrative remedies with the FDIC before filing certain claims." (*Benson v. JPMorgan Chase Bank, N.A.* (9th Cir. 2012) 673 F.3d 1207, 1211 (*Benson*); *2974 Properties, Inc. v. Resolution Trust Corp.* (1994) 23 Cal.App.4th 871, 877 (*2974 Properties*).)

Once the FDIC is appointed receiver, it must promptly publish notice to the institution's creditors to present claims to the receiver by a specified date, known as the "bar date." (See, e.g., *Intercontinental Travel Marketing v. F.D.I.C.* (9th Cir. 1994) 45 F.3d 1278, 1281 (*Intercontinental*).) The notice must be republished one and two months later. (§ 1821, subd. (d)(3)(B).) The FDIC must also mail a similar notice to known creditors. (§ 1821, subd. (d)(3)(C).) Within 180 days of the filing of a claim, the FDIC must determine whether to allow or disallow the claim, and notify the claimant of the determination. (§ 1821, subd. (d)(5)(A).) Within 60 days after a claim is disallowed, or after 180 days of the claim's filing, the claimant may either seek administrative review of the claim, "or file suit on such claim (or continue an action commenced before the appointment of the receiver) in the district or territorial court of the United States for the district within which the depository institution's principal place of business is located or the United States District Court for the District of Columbia (and such court shall have jurisdiction to hear such claim)." (§ 1821, subd. (d)(6)(A).) Judicial review of a disallowed claim is de novo. (§ 1821, subd. (d)(5)(E); *Brady Dev. Co. v. Resolution Trust Corp.* (4th Cir. 1994) 14 F.3d 998, 1003 (*Brady*).) If the claimant fails to seek administrative or judicial review within the 60-day period, "the claim shall be deemed to be disallowed . . . as of the end of such period, such disallowance shall be final, and the

7

claimant shall have no further rights or remedies with respect to such claim." (§ 1821, subd. (d)(6)(B).)

Section 1821, subdivision (d)(13)(D) states: "Except as otherwise provided in this subsection, no court shall have jurisdiction over – (i) any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the Corporation has been appointed receiver, including assets which the Corporation may acquire from itself as such receiver; or (ii) any claim relating to any act or omission of such institution or the Corporation as receiver." Thus, "[f]ailure to comply with the claims procedure bars any lawsuit against a failed depository institution." (*Robbins v. Foothill Nissan* (1994) 22 Cal.App.4th 1769, 1778.)

It is undisputed that Saffer did not exhaust administrative remedies under FIRREA before filing suit. However, Saffer contends this failure is not fatal to his claims, or this appeal, for several reasons. He contends judicial action on his claims is not barred because exhaustion of administrative remedies does not implicate fundamental jurisdiction under California law. He thus asserts exhaustion was a procedural defense JPMC could, and did, waive. Saffer also argues he was not required to exhaust administrative remedies under FIRREA because (1) his claims—employment claims— were not susceptible of resolution by the FDIC; (2) he did not receive adequate notice of the claims bar date or the receivership; and (3) he was not required to exhaust as to JPMC or as to Wolf.

**B. Failure to Exhaust Administrative Remedies Under FIRREA Deprives Courts of Subject Matter Jurisdiction**

A threshold question is whether Saffer's failure to exhaust his administrative remedies under FIRREA calls into question the courts' subject matter jurisdiction over his claims. We conclude that it does.

**i. Subject Matter Jurisdiction Principles**

Subject matter jurisdiction is a fundamental requirement for judicial consideration of claims. "The California Supreme Court has defined subject matter jurisdiction thusly: 'Subject matter jurisdiction . . . is the power of the court over a cause of action or to act in

8

a particular way.' [Citations.] By contrast, the lack of subject matter jurisdiction means the entire absence of power to hear or determine a case; i.e., an absence of authority over the subject matter. [Citations.] Where the evidence is not in dispute, a determination of subject matter jurisdiction is a legal question subject to de novo review." (*Dial 800 v. Fesbinder* (2004) 118 Cal.App.4th 32, 42.) Subject matter jurisdiction may not be " ' "conferred by consent, waiver, agreement, acquiescence, or estoppel." ' [Citation.]" (*Totten, supra,* 154 Cal.App.4th at p. 47.) As noted above, " '[t]he adequacy of the court's subject matter jurisdiction must be addressed whenever that issue comes to the court's attention.' [Citation.]" (*Id.* at p. 46; *In re Gloria A., supra,* 213 Cal.App.4th at p. 481.) Thus, it may be considered for the first time on appeal (*People v. Lara* (2010) 48 Cal.4th 216, 225 (*Lara*)), and requires no particular procedural vehicle. (*Great Western Casinos, Inc. v. Morongo Band of Mission Indians* (1999) 74 Cal.App.4th 1407, 1417-1418.) "[A]ny judgment or order rendered by a court lacking subject matter jurisdiction is 'void on its face . . . ' [Citation.]" (*Varian Medical Systems, Inc. v. Delfino* (2005) 35 Cal.4th 180, 196 (*Varian*).)

### ii. Failure to exhaust FIRREA administrative remedies deprives courts of subject matter jurisdiction

It is now well established that "exhaustion of the act's administrative review process is a precondition to litigation against the [FDIC] to recover a debt owed by a failed bank." (*Neman v. Commercial Capital Bank* (2009) 173 Cal.App.4th 645, 651 (*Neman*).) "[S]ection 1821(d)(13)(D) denies jurisdiction to any court, state or federal, to consider claims *except* in accordance with section 1821(d) . . . [S]ection 1821(d) grants jurisdiction to certain courts only, and then in only two cases: [¶] (a) Judicial review of the receiver's determination of the claimant's appeal if it seeks administrative review, (§ 1821(d)(7)(A); and [¶] (b) Over suits filed or continued by a claimant following the receiver's denial of a claim, or the expiration of 180 days after the filing of a claim. (§ 1821(d)(6)(A).)" (*2974 Properties, supra,* 23 Cal.App.4th at p. 878.)

9

As our colleagues in Division Seven explained in *2974 Properties*: "The exhaustion of administrative remedies is mandatory when, as here, Congress imposes an exhaustion requirement by statute. [Citations.] [¶] Further, the relevant case law interpreting section 1821(d) confirms that completion of the claims process is a mandatory prerequisite to judicial review. [Citations.] [¶] . . . . 'Congress *expressly withdrew jurisdiction* to resolve claims to a failed bank's assets *from all courts*, except as provided in 12 U.S.C., § 1821(d). . . . [T]he administrative procedure exhaustion requirement of FIRREA is statutory, not judicial. [Citation.] We are therefore not at liberty to ignore the statutory command.' [Citation.] . . . .[U]nless a claimant has exhausted the administrative claims process, no court has jurisdiction to hear the claim." (*2974 Properties, supra,* 23 Cal.App.4th at pp. 878-880, italics in original, fn. omitted.)

Likewise, numerous federal authorities conclude the failure to exhaust FIRREA administrative remedies prior to filing suit on a covered claim deprives courts of subject matter jurisdiction to consider the claim. (See e.g., *Acosta-Ramírez v. Banco Popular De Puerto Rico* (1st Cir. 2013) 712 F.3d 14, 19; *Aber-Shukofsky v. JPMorgan Chase & Co.* (E.D.N.Y. 2010) 755 F.Supp.2d 441, 446 (*Aber-Shukofsky*) ["[T]he Second Circuit has consistently held that courts lack subject matter jurisdiction to hear a claim against a failed bank taken into receivership by the FDIC unless the plaintiff has exhausted the administrative claims process"]; *Althouse v. Resolution Trust Corp.* (3d Cir. 1992) 969 F.2d 1544, 1545-1546; *Elmco Properties, Inc. v. Second Nat. Fed. Sav. Ass'n* (4th Cir. 1996) 94 F.3d 914, 919 (*Elmco*); *Farnik v. F.D.I.C.* (7th Cir. 2013) 707 F.3d 717, 721-722 (*Farnik*); *Bueford v. Resolution Trust Corp.* (8th Cir. 1993) 991 F.2d 481, 484; *Intercontinental, supra,* 45 F.3d at p. 1278; *Damiano v. F.D.I.C.* (11th Cir. 1997) 104 F.3d 328, 333; *Freeman v. F.D.I.C.* (D.C. Cir. 1995) 56 F.3d 1394, 1399-1400.)

### iii. California Cases Regarding Administrative Exhaustion Are Not Controlling on the Question of Whether Failure to Exhaust FIRREA Procedures Implicates Subject Matter Jurisdiction

Despite section 1821(d)(13)(D) and the many authorities interpreting it, Saffer contends that under California law, a failure to exhaust administrative remedies does not deprive the court of subject matter jurisdiction and the defense can be waived. We disagree.

In *Abelleira v. District Court of Appeal* (1941) 17 Cal.2d 280 (*Abelleira*), the California Supreme Court described exhaustion of administrative remedies as a "jurisdictional prerequisite . . . to the courts." (*Id.* at p. 293.) In *Green v. City of Oceanside* (1987) 194 Cal.App.3d 212 (*Green*), the court rejected the argument that *Abelleira* determined exhaustion of administrative remedies implicated subject matter jurisdiction. Instead, the *Green* court described *Abelleira* as making it "abundantly clear that the exhaustion doctrine does *not* implicate subject matter jurisdiction but rather is a 'procedural prerequisite' 'originally devised for convenience and efficiency' and now 'followed under the doctrine of *stare decisis. . .*' [Citation.] It is 'jurisdictional' only in the sense that a court's failure to apply the rule in a situation where the issue has been properly raised can be corrected by the issuance of a writ of prohibition." (*Green*, at p. 222.) The *Green* court thus concluded the defense of failure to exhaust administrative remedies could be waived by the defendant's failure to raise it before or during trial. (*Id.* at pp. 222-223.) Subsequently, other courts have adopted similar reasoning and concluded the failure to exhaust administrative remedies does not deprive a court of subject matter jurisdiction, and the defense may be waived. (See e.g., *Cummings v. Stanley* (2009) 177 Cal.App.4th 493, 505-506 (*Cummings*); *Mokler v. County of Orange* (2007) 157 Cal.App.4th 121, 135-136 (*Mokler*).)

However, these cases concerned administrative exhaustion schemes that were neither mandatory, nor part of a statute that explicitly stripped courts of jurisdiction in the absence of compliance with the relevant exhaustion requirements. For example, in *Green*, the plaintiff was terminated from employment with the City of Oceanside.

11

An agreement between the city and an employee association to which the plaintiff belonged provided an internal grievance procedure, including various administrative appeals. The plaintiff did not challenge his termination through the employees' grievance procedure but filed suit in the superior court. The court found the internal grievance procedure was simply a "procedural prerequisite," creating only a "potential procedural defense" that could be waived. (*Green*, *supra*, 194 Cal.App.3d at pp. 222-223.)

Similarly, in *Mokler*, a county employee was terminated; internal grievance procedures were available to her to challenge the termination. (*Mokler, supra*, 177 Cal.App.4th at p. 131.) The grievance procedures expressly provided that they were subject to waiver by mutual consent. (*Id.* at p. 136.) The County did not raise the employee's failure to exhaust administrative remedies until after a full trial on the merits; the court concluded the defense was waived. (*Ibid.*) Likewise, in *Cummings*, the relevant statute provided an elector "may" seek a writ of mandate prior to an election to challenge the eligibility of candidates on an election ballot. (*Cummings*, *supra*, 177 Cal.App.4th at p. 505.) The court concluded the defendant waived an administrative exhaustion defense by failing to raise it in the trial court. (*Id.* at pp. 505-506.)

Although these cases, like the instant one, concerned "administrative exhaustion," the strictures of FIRREA and its explicit stripping of jurisdiction from the courts render *Green* and its progeny inapposite to the case at bar. Unlike administrative remedies set forth in a contract between the parties, or a permissive statutory procedure, FIRREA's exhaustion requirements are set forth by federal statute, they are mandatory, they do not allow for waiver by consent, and they explicitly state courts do not have jurisdiction to consider claims subject to exhaustion unless the claimant first follows the administrative procedures. (See *Rosa v. Resolution Trust Corp.* (3d Cir. 1991) 938 F.2d 383, 395 (*Rosa*) [noting: "[W]e are not confronted with a judicially created exhaustion requirement, but with one that is mandated by statute. Further, Congress made this statutory exhaustion requirement explicitly jurisdictional."].)

12

This is consistent with the purpose of the statute. As explained in *2974 Properties,* "In FIRREA, Congress enacted a comprehensive and mandatory statutory scheme to enable the RTC [the predecessor to the FDIC], when acting as receiver for a failed institution, to carry out its fundamental functions of conserving and preserving the assets of the failed institution, and ultimately making pro rata distributions of those assets to the creditors of the institutions. . . . [¶] The administrative claims process . . . provides a centralized mechanism for consideration and resolution of the bulk of claims against insolvent thrifts without the delay and expense of litigation, by requiring that all claims be submitted to the receiver within a finite time period, and by allowing the receiver the initial opportunity to review and resolve the claims." (*2947 Properties, supra,* 23 Cal.App.4th at pp. 876-877, fns. omitted.)

Moreover, the California Supreme Court's analysis in *Lara*, *supra*, 48 Cal.4th 216, supports the conclusion that the FIRREA administrative exhaustion requirements implicate subject matter jurisdiction. The court explained: "A lack of jurisdiction in its fundamental or strict sense results in ' "an entire absence of power to hear or determine the case, an absence of authority over the subject matter or the parties." [Citation.] On the other hand, a court may have jurisdiction in the strict sense but nevertheless lack " 'jurisdiction' (or power) to act except in a particular manner, or to give certain kinds of relief, or to act without the occurrence of certain procedural prerequisites." [Citation.] When a court fails to conduct itself in the manner prescribed, it is said to have acted in *excess* of jurisdiction." ' [Citations.] [¶] . . . [¶] Whether the failure to follow a statute makes subsequent action void or merely voidable ' "has been characterized as a question of whether the statute should be accorded 'mandatory' or 'directory' effect. If the failure is determined to have an invalidating effect, the statute is said to be mandatory; if the failure is determined not to invalidate subsequent action, the statute is said to be directory." [Citation.]' [Citation.] [¶] Whether a particular statute is intended to impose a mandatory duty is a question of interpretation for the courts. [Citation.] 'Unless the Legislature clearly expresses a contrary intent, time limits are typically deemed directory.' [Citation.]" (*Id.* at pp. 224-225.)

13

As noted above, not only does FIRREA's language indicate courts have no jurisdiction unless the claims process is first followed, federal courts interpreting FIRREA's administrative exhaustion requirements have consistently interpreted the procedures as creating a mandatory precondition to litigation, and as depriving courts of subject matter jurisdiction if the claims procedures are not first followed. (In addition to cases cited above see also, *Tellado v. IndyMac Mortg. Servs.* (3d Cir. 2013) 707 F.3d 275, *Benson, supra,* 673 F.3d at p. 1215; *Brady, supra,* 14 F.3d at pp. 1003, 1006-1007; *Interface Kanner, LLC v. JPMorgan Chase Bank* (11th Cir. 2013) 704 F.3d 927, 934.) Several state courts, including courts of this state, have come to the same conclusion. (See e.g., *2947 Properties, supra,* 23 Cal.App.4th at pp. 879-880; *Neman, supra,* 173 Cal.App.4th at p. 651; *Thomas v. FDIC* (Colo. 2011) 255 P.3d 1073, 1080-1082; *Schettler v. RalRon Capital Corp.* (Nev. 2012) 275 P.3d 933, 934, 938; *McLaughlin v. F.D.I.C.* (Mass. 1993) 612 N.E.2d 671, 673 [failure to timely file exhaust with FDIC fatal to appeal]; *Jinadu v. CenTrust Mortgage Corp.* (Minn.Ct.App. 1994) 517 N.W.2d 84, 87-88; *Bobick v. Community & Southern Bank* (Ga.Ct.App. 2013) 743 S.E.2d 518, 527-529.)

We agree with the many other courts that have concluded a failure to exhaust FIRREA administrative remedies creates a jurisdictional bar and implicates a question of subject matter jurisdiction. The reasoning of *Green* and its progeny is not applicable, given FIRREA's specific mandates.[6] (See also *Varian, supra,* 35 Cal.4th at pp. 196-197 [without subject matter jurisdiction trial court actions are void, not merely voidable]; *Totten, supra,* 154 Cal.App.4th at pp. 50-51, 54 [ERISA completely preempted state law cause of action and trial court had no subject matter jurisdiction; trial court judgment

---

[6]     At least one court has concluded that while FIRREA's administrative exhaustion requirements are jurisdictional, certain time limits set forth in the statute are directory claims processing rules. (See *Miller v. FDIC* (7th Cir. 2013) 738 F.3d 836 (*Miller*) and *Campbell v. Federal Deposit Insurance Corporation* (*Campbell*) (7th Cir. 2012) 676 F.3d 615, 618; see also *Carlyle Towers Condo Ass'n v. FDIC* (2d Cir. 1999) 170 F.3d 301, 309-310.) As discussed in greater detail below, the reasoning of these cases does not aid Saffer, since he completely failed to exhaust administrative remedies under FIRREA prior to filing suit.

vacated and case dismissed].)  Thus, unless Saffer's claims were not subject to FIRREA's exhaustion requirements, any judicial action on his claims was invalid, other than dismissal for lack of subject matter jurisdiction.  JPMC could not waive the issue by failing to promptly raise it.

## C.  Saffer's Claims Were Subject to FIRREA Administrative Exhaustion Requirements

Saffer argues he was not required to exhaust administrative remedies under FIRREA before filing his claims.  We find his contentions unavailing.

### i.  Saffer's claims were not exempt from exhaustion because they were employment claims

Saffer contends he was not required to file a claim with the FDIC because his claims were not susceptible of resolution through the claims procedure.  We disagree. Saffer's contention refers to a phrase employed by some courts to explain that FIRREA "bars judicial review of any non-exhausted claim, monetary or nonmonetary, which is 'susceptible of resolution through the claims procedure.'  [Citation.]"  (*Henderson v. Bank of New England* (9th Cir. 1993) 986 F.2d 319, 321, quoting *Rosa, supra,* 938 F.2d at p. 394.)  In *Rosa,* the court concluded the plaintiffs' claims seeking nonmonetary injunctive relief that would bar retroactive termination of an ERISA plan were not susceptible of resolution through the claims procedure.  As a result, the claims were not subject to the jurisdictional bar.

However, the *Rosa* court's conclusion of  "non-susceptibility" was not due to a finding that the FDIC lacked the necessary substantive expertise in ERISA to review the claims.  Instead, the court determined section 1821(d)(13)(D)(i) addressed claims looking directly to payments from assets, or in some respect determining rights with respect to assets, and did not encompass purely injunctive claims relating to retroactive termination of an ERISA plan.  (*Rosa, supra*, 938 F.2d at p. 394.)  The court also concluded the claims procedure gave the Resolution Trust Corporation (RTC) the authority to allow or disallow claims, and pay creditor claims, but the court was "at a loss to understand how RTC would 'determine,' or 'allow' or 'disallow,' a claim seeking an order barring

15

retroactive termination of the plan, or how it would 'pay' such a claim if allowed." (*Id.* at pp. 394-395.) The court thus found the claims for injunctive relief did not require exhaustion.

Unlike the *Rosa* plaintiffs' claims, Saffer's claims were monetary, and exclusively concerned the pre-receivership acts of the failed bank, WaMu. Courts have concluded that claims of varying subject matters required FIRREA exhaustion, including employment-related claims, so long as they were claims relating to the acts or omissions of a failed depository institution over which the FDIC was appointed receiver. (*Westberg v. F.D.I.C.* (D.D.C. 2013) 926 F.Supp.2d 61, 69-70, fn. omitted (*Westberg*) [plaintiffs' "claim would have been susceptible to resolution through the administrative procedure because it is an action that seeks a determination of rights with respect to the assets of the failed bank for which the FDIC was appointed receiver, and thus, it is the very type of action covered by Section 1821 (d)(13)(D)."]; cf. *Am. Nat'l Ins. Co. v. FDIC* (D.C. Cir. 2011) 642 F.3d 1137, 1143-1144 [claim against a third-party bank for its *own* wrongdoing is not a "claim" requiring exhaustion under FIRREA].)

For example, in *Bueford v. Resolution Trust Corp., supra,* 991 F.2d 481, the plaintiff asserted age and race-based employment discrimination claims against her former employer, a bank. While her suit was pending, the RTC was appointed receiver of the bank. The Court of Appeals concluded she was required to comply with FIRREA's administrative exhaustion procedures. Because she had not done so, the trial court properly dismissed her case for lack of subject matter jurisdiction. (*Id.* at pp. 483-484.) In *Demelo v. U.S. Bank Nat'l Ass'n* (2013) 727 F.3d 117 (*Demelo*), the court rejected the plaintiffs' argument that their claims against a failed bank for violation of state consumer protection laws were not "creditors' claims" requiring FIRREA exhaustion. (*Id.* at p. 123.) The court explained FIRREA "bars jurisdiction over '*any* claim relating to *any* act or omission' of the failed financial institution. 12 U.S.C. § 1821(d)(13)(D)(ii). . . . We have given this provision the full scope that its text demands and, in doing so, we have not limited it to creditors' claims." (*Id.* at pp. 122-123.)

16

In *Aber-Shukofsky*, the district court dismissed the plaintiffs' claims that WaMu violated the Fair Labor Standards Act (FLSA), as well as state wage and labor laws. The plaintiffs were former WaMu employees suing JPMC for alleged overtime wage violations by WaMu. The plaintiffs failed to exhaust FIRREA administrative remedies before filing suit, thus the court dismissed the action for lack of subject matter jurisdiction. (*Aber-Shukofsky, supra,* 755 F.Supp.2d at pp. 443, 446.) The court rejected arguments that FLSA "trumped" FIRREA, as well as the argument that a plaintiff need not exhaust administrative remedies because he or she has reason to believe the FDIC will disallow the claim. (*Id.* at p. 451.) (See also *McMillian v. FDIC* (11th Cir. 1996) 81 F.3d 1041, 1044-1045 [requiring exhaustion of WARN act claim; severance pay claim was filed with the FDIC and disallowed; received judicial review]; *Ladd v. Second Nat'l Bank* (N.D. Ohio 1996) 941 F.Supp. 87, 89-90 [failure to exhaust FIRREA administrative remedies created a jurisdictional bar requiring dismissal of plaintiff's claims that the FDIC, as receiver, violated the Family and Medical Leave Act in connection with her termination]; *Jinadu v. CenTrust Mortgage Corp.*, *supra,* 517 N.W.2d at pp. 86-87 [because plaintiff failed to exhaust administrative remedies under FIRREA, trial court did not have subject matter jurisdiction over employment discrimination and other employment-related claims asserted against financial institution in receivership].)

We reject the argument that Saffer was not required to exhaust his administrative remedies because his claims were not susceptible of resolution through the process, due to their subject matter. Saffer's claims concerned the acts or omissions of a depository institution for which the FDIC was appointed receiver, and he sought a monetary recovery. His claims were well within the realm of section 1821, subdivision (d)(13)(D). (See also *Benson, supra,* 673 F.3d at p. 1213 [rejecting non-susceptibility argument; plaintiffs offered no reason to believe FIRREA exhaustion would have been futile had claims been timely submitted].)

17

**ii. Naming JPMC as a defendant did not excuse Saffer from exhausting FIRREA administrative remedies**

Saffer further contends he was not required to exhaust administrative remedies to pursue his claims against JPMC as the successor bank. Yet, several courts have concluded FIRREA exhaustion requirements apply even when a claim is asserted against a successor bank, rather than the failed bank or the FDIC. Section 1821(d)(13)(D)(ii) withdraws jurisdiction over "any claim relating to any act or omission of [a failed] institution or the Corporation as receiver." Thus, as the Ninth Circuit Court of Appeals explained in *Benson*, " 'Where a claim is *functionally*, albeit not *formally*, against a depository institution for which the FDIC is receiver, it is a "claim" within the meaning of FIRREA's administrative claims process.' [Citation.] . . . . [¶] . . . FIRREA's jurisdictional bar applies to claims asserted against a purchasing bank when the claim is based on the conduct of the failed institution." (*Benson, supra,* 673 F.3d at p. 1214, fn. omitted, citing *Am. Nat'l Ins. Co. v. FDIC, supra,* 642 F.3d at p. 1144; see also *Demelo, supra,* 727 F.3d at p. 122; *Farnik, supra,* 707 F.3d at pp. 722-725; *Vill. of Oakwood v. State Bank & Trust Co.* (6th Cir. 2008) 539 F.3d 373, 386; *American First Fed., Inc. v. Lake Forest Park, Inc.* (11th Cir. 1999) 198 F.3d 1259, 1263 [purchaser of challenged asset stood in the shoes of the RTC and acquired its protected status]; *Aber-Shukofsky, supra,* 755 F.Supp.2d at p. 448; *Stewart v. JPMorgan Chase* (Bankr. W.D.Pa. 2012) 473 B.R. 612, 625; *Schettler v. RalRon Capital Corp., supra,* 275 P.3d at p. 938.)

In *Benson*, the court noted section 1821(d)(13)(D)(ii) "distinguishes claims on their factual bases rather than on the identity of the defendant: It asks whether claims 'relate to any act or omission' of a failed institution or the FDIC. Notably, the provision does not make any distinction based on the identity of the party from whom relief is sought." (*Benson*, *supra*, 673 F.3d at p. 1212.) Since the *Benson* plaintiffs' claims

concerned the actions of WaMu, rather than independent conduct of JPMC, the plaintiffs were required to comply with FIRREA's administrative exhaustion requirements.[7]

Here, all of Saffer's claims challenge the actions or omissions of the failed bank, WaMu. The complaint contains no allegations that involve actions taken by any party after the receivership or the sale of WaMu's assets. Instead, Saffer seeks legal recourse for the conduct of WaMu and WaMu agents, before the FDIC was appointed receiver, and before JPMC purchased WaMu assets. There are no allegations based on JPMC's own conduct, nor could there be given the time period relevant to Saffer's claims. These are squarely the kinds of claims that must first be presented to the FDIC under section 1821(d)(13)(D)(ii). (*Tellado v. IndyMac Mortg. Servs., supra,* 707 F.3d at pp. 280-281 [claim that was wholly dependent on failed bank's wrongdoing was subject to FIRREA exhaustion requirements].)

We also find instructive the reasoning of the *Aber-Shukofsky* court in its determination that the plaintiffs before it were required to exhaust claims asserted against JPMC. In that case, only WaMu was alleged to have violated state wage and hour laws during the plaintiffs' employment with WaMu, "well before WaMu's failure and seizure on September 25, 2008, the FDIC's appointment as receiver, and WaMu's acquisition by defendants." The court explained: "Section 1821(d)(13)(D)(ii) refers to '*any claim* relating to any act or omission' of a failed institution and does not make its application contingent upon whom the claim is against. (emphasis added). Thus, the statutory provision, by its plain language, applies with equal force to a successor in interest to the failed institution. In short, given the plain language of FIRREA, the Court finds that plaintiffs cannot evade FIRREA's mandatory exhaustion requirement simply by asserting claims against defendants, as third-party purchasers of the failed bank's assets, for acts or omissions that relate to WaMu." (*Aber-Shukofsky, supra,* 755 F.Supp.2d at p. 447; *Westberg, supra,* 926 F.Supp.2d at p. 67.)

---

[7] Although the *Benson* court ruled exhaustion would not be required as to claims based on JPMC's independent conduct, it concluded the plaintiffs had not adequately pled any such claims. (*Benson, supra,* 673 F.3d at pp. 1216-1217.)

Saffer additionally contends there is a possibility JPMC contractually assumed liability for claims such as his, but he was unable to determine whether this was the case without discovery, which the arbitrator improperly denied. He acknowledges a "version" of the purchase and assumption agreement between the FDIC and JPMC is available on the FDIC website, and other courts have taken judicial notice of that agreement and its legal effect. (See e.g., *Scott v. JPMorgan Chase Bank, N.A.* (2013) 214 Cal.App.4th 743, 753-757 [trial court did not abuse its discretion in taking judicial notice of purchase and assumption agreement between JPMC and FDIC, as posted on FDIC website, as well as the legal effect of the agreement as transferring certain assets but not certain liabilities; collecting similar cases].) Yet, he asserts there *could* be collateral agreements or modifications, thus "the completeness of the agreement should not be a matter for judicial notice in this case."

Several courts have rejected similar arguments regarding successor institutions. For example, in *Benson*, the plaintiffs argued WaMu knowingly provided banking services that facilitated a Ponzi scheme, and JPMC was liable "because it assumed WaMu's liabilities pursuant to a purchase and assumption agreement with the FDIC." (*Benson, supra,* 673 F.3d at p. 1215.) The court rejected this argument: "By relying on WaMu's alleged wrongdoing, plaintiffs' claims plainly 'relat[e] to any act or omission' of a 'depository institution for which the [FDIC] has been appointed receiver.' § 1821(d)(13)(D). And because plaintiffs did not exhaust administrative remedies, their claims are jurisdictionally barred by FIRREA." (*Ibid.*) Similarly, in *Aber-Shukofsky*, the plaintiffs argued they were excused from the exhaustion requirements because JPMC "accepted certain assets and liabilities as WaMu's successors in interest," and FIRREA was intended to protect the FDIC, which was no longer operating as WaMu's receiver. (*Aber-Shukofsky*, *supra*, 755 F.Supp. at p. 446.) The court rejected this argument, concluding section 1821(d)(13)(D)(ii) referred to any claim relating to any act or omission of a failed institution, the plaintiff's FLSA claims related solely to WaMu's acts or omissions, and the provision applied with equal force to a successor in interest to a

20

failed institution.  (*Aber-Shukofsky, supra,* at p. 447.)  We find the above-described

reasoning persuasive.**8**

**8**     We acknowledge some courts have looked to a relevant purchase and assumption agreement as a factor in analyzing whether claims asserted against an institution that purchased a failed bank's assets from the FDIC were subject to FIRREA exhaustion requirements.  (See, e.g., *Acosta-Ramírez v. Banco Popular de Puerto Rico*, *supra,* 712 F.3d at pp. 18-19; *Farnik, supra,* 707 F.3d at p. 724; *Caires v. JP Morgan Chase Bank* (D. Conn. 2010) 745 F.Supp.2d 40, 48-49; *Fed. Hous. Fin. Agency v. JPMorgan Chase & Co.* (S.D.N.Y. 2012) 902 F.Supp.2d 476, 501-502; *NCUA Bd. v. JPMorgan Chase Bank, N.A.* (D. Kan. Sept. 3, 2013, No. 13-2012-JWL) 2013 WL 4736374.)

Yet, in these cases, the claimants offered documents and legal argument to support the contention that exhaustion was not required because the purchasing institution assumed liability for their claims.  This is necessary because, " '[a]bsent an express transfer of liability by [the receiver] and an express assumption of liability by [the successor], FIRREA directs that [the receiver] is the proper successor to the liability . . . .' *Payne v. Sec. Sav. & Loan Ass'n, F.A.,* 924 F.2d 109, 111–12 (7th Cir. 1991). This allows the receiver to 'absorb liabilities itself and guarantee potential purchasers that the assets they buy are not encumbered by additional financial obligations.' [Citation.]" (*Farnik, supra,* 707 F.3d at p. 724.)

Here, Saffer's sole contention is that he required discovery to determine whether JPMC assumed liability for his claims.  His complaint did not allege JPMC expressly assumed liability for his claims in a purchase and assumption agreement, or in a collateral contract.  He further asks us *not* to take judicial notice of the publicly available documents relevant to this issue, and does not assert they suggest JPMC assumed liability for claims like his.  Although we do not review the arbitrator's decision in this appeal, we note the record from the arbitration proceedings does not include such publicly available documents, or any affirmative suggestion that JPMC assumed liability for Saffer's claims, other than its failure, in litigation, to expressly disclaim successor liability.  Even were we persuaded to follow the approach of those courts that have considered a purchase and assumption agreement in the exhaustion analysis, we would conclude the record here neither establishes Saffer was excused from complying with FIRREA exhaustion requirements, nor entitles him to an opportunity to further develop the factual record.  (See *Farnik, supra,* 707 F.3d at p. 725 [plaintiffs' mere speculation about transfer of liability was insufficient to avoid jurisdictional bar for failure to exhaust FIRREA remedies].)

21

### iii. Saffer was not excused from exhaustion requirements because of a lack of notice

Saffer additionally argues he was excused from following FIRREA's claim process because he failed to receive adequate notice of the receivership, or the bar date, as a creditor of WaMu. We again disagree.

FIRREA requires the FDIC to provide two different kinds of notice. Under section 1821(d)(3)(B)(i)-(ii), the FDIC must promptly publish notice to creditors to present their claims to the receiver by the bar date, and republish the notice. The FDIC must also mail a similar notice to any creditor shown on the failed institution's books either (i) to the creditor's last address appearing in the books, or (ii) "upon discovery of the name and address of a claimant not appearing on the institution's books within 30 days after the discovery of such name and address." (§ 1821(d)(3)(C)(ii).) As the First Circuit Court of Appeals recently explained: "FIRREA only requires that the FDIC mail notice to known creditors or claimants, see 12 U.S.C. § 1821(d)(3)(C)." (*Demelo, supra,* 727 F.3d at p. 124.) When, as here, the plaintiff's claim is not advanced until after the financial institution has failed, the claims "could not have been known to the FDIC at the time of the receivership. Notice was given by publication, and notice by publication is sufficient for inchoate claims." (*Ibid.; Elmco, supra,* 94 F.3d at p. 921.) The FDIC was not required to mail notice to Saffer after being appointed receiver of WaMu.

Moreover, we agree with the numerous courts concluding that even if the receiver fails to mail the required notice of the claims process and bar date, a plaintiff is not excused from exhausting administrative remedies. (*Elmco, supra,* 94 F.3d at p. 920; *Intercontinental, supra,* 45 F.3d at pp. 1285-1286; *Freeman v. F.D.I.C., supra,* 56 F.3d at p. 1402, *Meliezer v. Resolution Trust Company* (5th Cir. 1992) 952 F.2d 879, 882-883; *Ladd v. Second Nat'l Bank, supra,* 941 F.Supp. at pp. 90-91.) " 'The only exception to the strict requirement of exhaustion of remedies, [is] where the claimant does not receive notice of the appointment of the receiver in time to file his claim.' [Citation; 12 U.S.C., § 1821(d)(5)(C).] This exception will only apply [if the plaintiff] did 'not receive notice of the fact of the appointment of a receiver. The exception does not apply to claimants

22

who are aware of the appointment of a receiver but who do not receive notice of the filing deadline.' [Citation.]" (*RTC Mortg. Trust 1994-NZ v. Haith* (8th Cir. 1998) 133 F.3d 574, 579.) Further when there is "sufficient inquiry notice of the receivership, the failure to receive mailed notice does not avoid the jurisdictional bar of the statute." (*Ibid.*) Even where the claimant may not know the exact nature of the receiver's role, knowledge of the receiver's involvement may sufficiently place the claimant on inquiry notice "as to require further inquiry into the details of the administrative process." (*Ibid.*)

Here, the FDIC published notice in the Wall Street Journal, a national publication, on at least two occasions at the beginning and end of October 2008. Saffer's claims accrued no later than January 2008, when he resigned from WaMu. He did not file his complaint until 2009, well after the failure of WaMu, the appointment of a receiver, and the passing of the bar date. This case is thus similar to *Tillman v. Resolution Trust Corp.* (4th Cir. 1994) 37 F.3d 1032 (*Tillman*), which the *Elmco* court described: "[T]he claimant in *Tillman* was not one that the RTC discovered before its bar date. In fact, Tillman did not assert his claims against the failed bank until 30 months after that bank entered receivership. [Citation.] Also, his claim was not based on a standard creditor-debtor arrangement, but on an alleged contract under which the bank had promised to reimburse him for expenses he incurred in the course of unrelated litigation. As a result, Tillman's interest appears not to have been known to RTC or to have been of a type that RTC should be required to discover on its own, and thus he fell within a class of claimants for whom notification by publication is sufficient." (*Elmco, supra*, 94 F.3d at p. 921.)

The *Elmco* court found the *Tillman* approach consistent with *Mullane v. Central Hanover Tr. Co.* (1950) 339 U.S. 306, 317, in which the Supreme Court explained notice by publication is sufficient for those whose interests are contingent, future, or not likely to come to a trustee's attention in the normal course of business. This is in contrast to those "with an identified, present property interest whose address is known or reasonably ascertainable. . . . As to such parties mere constructive notice by publication is insufficient. *Mullane,* 339 U.S. at p. 318." (*Elmco, supra*, 94 F.3d at p. 921.)

23

Saffer had sufficient inquiry notice of the receivership. As a result, lack of notice did not excuse him from exhausting his administrative remedies under FIRREA. (See *Demelo, supra,* 727 F.3d at p. 124 [rejecting lack of notice argument and successor liability arguments]; see also *Schettler v. RalRon Capital Corp., supra,* 275 P.3d at pp. 938-939 [successor in interest to FDIC entitled to benefit from exhaustion provisions, despite FDIC's failure to mail required notice to plaintiff]; *Rathbun v. IndyMac Mortg. Servs.* (D.Mont. 2013) 916 F.Supp.2d 1174, 1180-1181 [successor bank had no duty to provide notice; any FDIC failure to give notice did not render administrative claims process inapplicable]; *Bobick v. Community & Southern Bank, supra,* 743 S.E.2d at pp. 528-529 [plaintiff required to exhaust post-receivership claims against failed institution; failure to exhaust not excused by failure of FDIC to provide notice]; *Taylor v. ANB Bancshares, Inc.* (W.D.Ark. 2009) 682 F.Supp.2d 970, 976-977 [rejecting equitable tolling argument based on alleged inadequate notice by the FDIC].)

### iv. Saffer's late-filed claim was insufficient to meet the exhaustion requirements

Similarly, to the extent Saffer contends his claim filed in September 2012 was sufficient to satisfy the FIRREA exhaustion requirements, we disagree. In *Wujick v. Dale & Dale, Inc.* (3d Cir. 1994) 43 F.3d 790, the Court of Appeals rejected the very arguments Saffer makes here. In *Wujick*, the plaintiffs filed suit in Pennsylvania state court against a failed depository institution. After filing their suit, they submitted an administrative claim to the receiver. The receiver removed the case to federal court. The appellate court concluded that at the time the plaintiffs filed suit, "no court had subject matter jurisdiction over the suit because Plaintiffs had failed to exhaust the administrative remedies mandated by section 1821(d)(13)(D) of FIRREA." (*Id.* at p. 793.) The court rejected the plaintiffs' argument that their belated filing of a claim should allow them to pursue their claims, under a "no harm, no foul" line of reasoning, since Congress expressly withdrew jurisdiction from all courts over claims to a failed bank's assets made outside the FIRREA procedures. (*Id.* at pp. 793-794) The appellate court directed the lower court to dismiss the claims. (*Id.* at p. 794; see also *Althouse v.*

24

*Resolution Trust Corp., supra,* 969 F.2d at p. 1546 [failure to file *timely* claim bars claimant from receiving de novo review in court; to receive de novo review the disallowance must be for other reasons]; *Potter v. JPMorgan Chase Bank, N.A.* (C.D. Ca. May 8, 2013, No. CV 13-863 CAS (AGRx)) 2013 WL 1912718, *7 (*Potter*) [under FIRREA, no court has subject matter jurisdiction to hear a claim filed with FDIC after the bar date, unless the claim meets statutory exception for claims that could not have been filed before bar date].)

As noted above, federal courts have routinely found the failure to file a claim with the FDIC, *before instituting litigation in court,* prevents a court from having subject matter jurisdiction over covered claims. Saffer cites *Carlyle, supra,* 170 F.3d 301, for the proposition that FIRREA does not create a jurisdictional bar for late-filed claims, but we find *Carlyle* inapposite. In *Carlyle,* the court concluded FIRREA did not create a jurisdictional bar for claims *accruing after the bar date*, and thus untimely filed with the FDIC after the bar date. (*Carlyle*, at pp. 309-310.) The reasoning of *Carlyle* does not apply here, since Saffer's claims accrued well before the bar date, and he did not file a claim with the FDIC before suing in court.

In *Miller, supra,* 738 F.3d 836 and *Campbell, supra,* 676 F.3d 615, the Seventh Circuit Court of Appeals, citing *Carlyle* and recent United States Supreme Court jurisprudence, including *Henderson v. Shinseki* (2011) ---U.S.---, 131 S.Ct. 1197, 1202-1203, concluded that while FIRREA bars claimants from going directly to court without first going through an administrative process, the time limits for submitting claims to the FDIC are "claims processing rules" that are not jurisdictional, and thus may be subject to waiver, estoppel, or tolling. (*Miller, supra*, 738 F.3d at pp. 846-847; *Campbell*, *supra*, 676 F.3d at p. 618.) Yet, *Campbell* and *Miller* do not conflict with the principle that FIRREA creates a jurisdictional bar when, as here, there is a wholesale failure to exhaust administrative remedies prior to filing suit, as to a claim arising well before the bar date. As the *Miller* court explained, *Carlyle* and *Campbell* "involved the FDIC's receivership-specific deadline for submitting claims to the agency, and the opinions addressed whether the failure to timely file deprived the district court of jurisdiction to entertain complaints

25

*seeking judicial review of the disallowed claims.*" (*Miller*, 738 F.3d at p. 846, italics added.) *Carlyle, Campbell*, and *Miller* do not suggest a court may have subject matter jurisdiction over a claim where the plaintiff has not filed *any* claim with the FDIC, timely or untimely, prior to filing suit in court. Whether with a timely or untimely claim, "[a] claimant must . . . first complete the claims process before seeking judicial review." (*Henderson v. Bank of New England, supra,* 986 F.2d at p. 321.)

As in *Wujick*, Saffer's untimely filed claim with the FDIC does not satisfy the FIRREA exhaustion requirements, and his claims were barred.[9] Saffer's claim arose well before the December 2008 bar date. It was not impossible for him to file the claims before the bar date because they had not yet arisen, or he had failed to discover them. He did not pursue his administrative remedies prior to filing suit against WaMu. At the time he filed suit, no court had subject matter jurisdiction over his claims due to the failure to exhaust FIRREA remedies. (*Robbins v. Foothill Nissan*, *supra*, 22 Cal.App.4th at p. 1786; *Potter, supra,* 2013 WL 1912718, *7-9; see also *Bravo v. United States Nat'l Ass'n* (E.D.N.Y. Jan. 15, 2013, No. 12-CV-1183 (ENV) (LB)) 2013 WL 307824, fn.1.)

---

[9] We also find persuasive the reasoning of the court in *Potter, supra,* 2013 WL 1912718. *Potter* considered whether FIRREA's rules for filing *timely* claims with the FDIC create a jurisdictional bar, in light of the United States Supreme Court's decision in *Arbaugh v. Y&H Corp.* (2006) 546 U.S. 500, 515-516, which indicated that "when Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as nonjurisdictional in character." The *Potter* court analyzed FIRREA and concluded the statute's language disallowing untimely claims "is best construed to mean that courts lack power to consider untimely claims filed against a failed bank not meeting FIRREA's exceptions." (*Potter,* at *7.) The court further followed "the established rule that untimely claims only fall within FIRREA's exception when it would have been impossible to file them before the claims bar date," because the claims are based on events occurring after the bar date. (*Id.*, at pp. *8-9.) Here, the claim Saffer eventually filed with the FDIC did not meet FIRREA's exception. His complaint is entirely based on events occurring well before the bar date. He did not file a claim with the FDIC before filing suit in court. FIRREA's jurisdictional bar applied squarely to his claims.

### v. No Allegations Support Treating Wolf Differently

Finally, we must also reject Saffer's argument that he was not required to follow FIRREA claims procedures to pursue his claims against Wolf. Saffer's complaint alleges Wolf was his supervisor at WaMu, and that all defendants were acting as agents of the other defendants. There are no specific allegations relating to Wolf. Thus, even though Wolf was named as a defendant, it is clear the entire complaint alleges only claims relating to actions or omissions of the failed bank, WaMu, and to the extent Wolf was implicated, it was as an employee of WaMu. Exhaustion of those claims was necessary. (*Friederichs v. Gorz* (D. Minn. 2009) 624 F.Supp.2d 1058, 1062, fn. 4 [plaintiffs had to exhaust against defendant related to failed institution where complaint was "devoid of any substantive allegations" against the related defendant]; *Brabant v. JP Morgan Chase Bank* (D.Ariz. Jul. 2, 2012, No. CV 11-00848-TUC-JGZ) 2012 WL 2572281, *5 [FIRREA jurisdictional bar applied to claims against employees of the failed institution where plaintiffs' claims are based on the wrongdoing alleged to have been committed by the individual as an employee of the failed institution].)

## II.   Conclusion

Saffer's failure to exhaust FIRREA administrative remedies before filing suit prevented the trial court from acquiring subject matter jurisdiction over his claims. "[I]n the absence of subject matter jurisdiction, a trial court has no power 'to hear or determine [the] case.' [Citation.]" (*Varian, supra,* 35 Cal.4th at p. 196.) We acknowledge it would have been preferable for JPMC to raise Saffer's failure to exhaust under FIRREA much earlier in the process, rather than compelling the case to an unauthorized arbitration. However, " '[t]he administrative prerequisite to suit set forth in [FIRREA] has been strictly construed and is considered an absolute and unwaivable jurisdictional requirement . . . this court has no power to excuse a condition precedent to . . . jurisdiction regardless of the reason the condition was not met.' [Citation.] [¶] . . . . The doctrines of waiver and estoppel do not apply to subject matter jurisdiction determinations." (*Brady, supra,* 14 F.3d at p. 1007; *Intercontinental, supra,* 45 F.3d at p. 1286.) We therefore direct the trial court to vacate the judgment and order the action

dismissed.  (*2947 Properties, supra,* 23 Cal.App.4th at pp. 880-881; *Totten, supra,* 154 Cal.App.4th at pp. 44, 54.)

## DISPOSITION

The judgment entered in favor of JPMC is vacated and the matter is remanded to the trial court with directions to enter an order of dismissal against Saffer for lack of subject matter jurisdiction.  Respondent shall recover its costs on appeal.

**CERTIFIED FOR PUBLICATION**


BIGELOW, P. J.

We concur:


FLIER, J.


GRIMES, J.