# United States Court of Appeals
## For the First Circuit

No. 12-2485

EDIMARA DEMELO AND EDILSON DEMELO,

Plaintiffs, Appellants,

v.

U.S. BANK NATIONAL ASSOCIATION,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. William G. Young, U.S. District Judge]

Before

Torruella, Selya and Thompson,

Circuit Judges.

Carmeneliza Pérez-Kudzma, with whom Pérez-Kudzma Law Office, P.C. was on brief, for appellants.
Stephen C. Reilly, with whom Jennifer E. Greaney and Sally & Fitch LLP were on brief, for appellee.

August 16, 2013

**SELYA, Circuit Judge.** The Financial Institutions Reform, Recovery, and Enforcement Act of 1989 (FIRREA), Pub. L. No. 101-73, 103 Stat. 183 (codified as amended in scattered sections of 12 U.S.C.), gives federal regulators a customized set of tools with which to ease the disruption often attendant to bank failures. When federal regulators step in, however, parties in interest ignore FIRREA-imposed requirements at their peril. This case, in which we affirm the district court's entry of judgment for a successor bank, bears witness to that verity.

## I.  BACKGROUND

The following facts are, for all intents and purposes, undisputed. In December of 2004, the plaintiffs, Edimara Demelo and her husband, Edilson Demelo, refinanced their home in Stoneham, Massachusetts by means of a new $388,000 loan from Downey Savings and Loan Association, a federally insured financial institution. The variable rate loan was amortized on a 30-year schedule, secured by a first mortgage, and structured so that the first year's monthly payments would remain fixed. In subsequent years, the borrowers' payments would fluctuate as the interest rate varied, but those payments could not be increased by more than 7.5 percent over the prior year's payments.

This sort of arrangement has the potential to inflate a loan's principal balance as the monthly payments may be insufficient to cover escalating interest rates in full. With this

eventuality in mind, the loan documents provided that the monthly payments would be increased to cover the entire owed principal and interest in the event that the outstanding principal balance reached 110 percent of the original loan amount.

That is what happened here: in February of 2008 — after four years of controlled monthly payments and steadily mounting interest rates — the plaintiffs' monthly loan payment doubled to account for the substantial growth of the underlying principal balance. The plaintiffs reached out to Downey Savings for assistance, but none was forthcoming.

What goes around comes around and, in November of 2008, the Office of Thrift Supervision closed Downey Savings and appointed the Federal Deposit Insurance Corporation (FDIC) as its receiver. See 12 U.S.C. § 1821(c)(3)(A); 75 Fed. Reg. 45114-01, 2010 WL 2990405 (Aug. 2, 2010). The FDIC entered into both a purchase and assumption agreement and a loan sale agreement with the defendant, U.S. Bank. By virtue of these agreements, U.S. Bank assumed all of Downey Savings' loans and mortgages.

The plaintiffs subsequently defaulted on their mortgage loan, and U.S. Bank initiated foreclosure proceedings. In June of 2011, U.S. Bank sent, by certified mail, to each of the plaintiffs a "Notice of Mortgagee's Sale of Real Estate." See Mass. Gen. Laws ch. 244, § 14. The plaintiffs executed receipts confirming that each of them had received this mailing. Concurrently, U.S. Bank

caused to be published on three separate occasions notice of the foreclosure sale.

On July 25, 2011, U.S. Bank conducted a foreclosure sale and later recorded a foreclosure deed. Despite the foreclosure sale and several attempts to evict them through summary process, the plaintiffs continued to occupy the demised premises. Several months after the consummation of the foreclosure sale, the plaintiffs went on the offensive. They sued U.S. Bank in a Massachusetts state court, seeking money damages and injunctive relief. They claimed, among other things, that the loan made by Downey Savings violated various state consumer protection laws and that the foreclosure was unlawful.

Citing diversity of citizenship and the existence of a controversy in the requisite amount, U.S. Bank removed the case to the federal district court. See 28 U.S.C. §§ 1332(a), 1441. It then moved to dismiss the plaintiffs' complaint. See Fed. R. Civ. P. 12(b)(1), (b)(6). The district court dismissed some but not all of the plaintiffs' claims. U.S. Bank proceeded to answer what was left of the complaint.

U.S. Bank soon moved for summary judgment, see Fed. R. Civ. P. 56, renewing its jurisdictional argument and adding other arguments. The plaintiffs opposed this motion but the district court, ruling ore tenus, granted it.

-4-

The plaintiffs appeal. They train their sights on the district court's summary judgment ruling. Specifically, they maintain that the loan violated the Borrower's Interest Act, see Mass. Gen. Laws ch. 183, § 28C; that it violated the Predatory Home Loan Practices Act, see id. ch. 183C, §§ 1-19; and that the foreclosure sale was invalid because U.S. Bank did not have a specific written assignment of the mortgage as required by state law.

## II. ANALYSIS

We review an order granting summary judgment de novo, taking the properly documented facts and all reasonable inferences therefrom in the light most agreeable to the non-moving parties (here, the plaintiffs). See Houlton Citizens' Coal. v. Town of Houlton, 175 F.3d 178, 184 (1st Cir. 1999).

### A. The Consumer Protection Claims.

The plaintiffs have advanced state statutory claims predicated on the Borrower's Interest Act and the Predatory Home Loan Practices Act. These claims have a common thread: each asserts that Downey Savings, in making the loan, violated a state consumer protection law. The plaintiffs assign error to the district court's entry of summary judgment on these claims.

We pause to note a potential source of uncertainty. The district court's dispositive ruling was made by way of a bench decision. This decision is unclear as to which of the several

-5-

grounds urged by U.S. Bank for rejecting the claims the court found persuasive. Because we are not restricted to the district court's reasoning but may affirm its entry of summary judgment on any basis made manifest by the record, see id., this lack of clarity does not require us to remand for further elucidation. Rather, we simply hinge our adjudication on FIRREA's jurisdictional bar.[1]

FIRREA sets forth a detailed claims-processing regime. See 12 U.S.C. § 1821(d)(3)-(13). This regime affords "a streamlined method for resolving most claims against failed institutions in a prompt, orderly fashion, without lengthy litigation." Marquis v. FDIC, 965 F.2d 1148, 1152 (1st Cir. 1992). The FDIC, once ensconced as receiver, must publish a notice requiring claims to be filed with it by a specified date. 12 U.S.C. § 1821(d)(3)(B)(i). It has 180 days within which to approve or disallow a filed claim. Id. § 1821(d)(5)(A)(i). Disappointed claimants may either pursue an administrative review process or seek judicial review in an appropriate federal district court. Id. § 1821(d)(6)(A).

This claims-processing regime is not optional: participation in it is "mandatory for all parties asserting claims against failed institutions." Marquis, 965 F.2d at 1151. The

---

[1] Because the jurisdictional bar defeats the plaintiffs' consumer protection claims, see text infra, we need not address the other grounds for summary judgment advanced by U.S. Bank.

failure to pursue an administrative claim is fatal.  See id. at 1152-53.

In the case at hand, the FDIC published the notice that FIRREA requires.  See 12 U.S.C. § 1821(d)(3)(B)(i).  Since the plaintiffs' consumer protection claims arise out of and relate exclusively to pre-receivership acts or omissions of the failed financial institution (Downey Savings), the plaintiffs' eschewal of the claims-processing regime renders those claims nugatory.  We explain briefly.

FIRREA proscribes judicial review of covered claims where, as here, plaintiffs have failed to comply with the statutorily mandated claims-processing regime.  This proscription is clear as a bell.  The statute unambiguously states (with exceptions not relevant here):

> [N]o court shall have jurisdiction over —
>
> (i) any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the [FDIC] has been appointed receiver, including assets which the [FDIC] may acquire from itself as such receiver; or
>
> (ii) any claim relating to any act or omission of [the failed] institution or the [FDIC] as receiver.

Id. § 1821(d)(13)(D).  This language operates to strip the federal district courts of subject-matter jurisdiction whenever a plaintiff tries to pursue a covered claim without going through the claims-

processing regime. See Acosta-Ramírez v. Banco Popular de P.R., 712 F.3d 14, 19-20 (1st Cir. 2013); Simon v. FDIC, 48 F.3d 53, 56-57 (1st Cir. 1995). We conclude, therefore, that because the plaintiffs did not comply with the requirements of the claims-processing regime, the jurisdictional bar erected by section 1821(d)(13)(D) pretermits their consumer protection claims.

The plaintiffs make three feeble efforts to forestall this conclusion. None of these efforts carries the day.

First, the plaintiffs contend that the statutory claims-processing regime and the corresponding jurisdictional bar apply only to claims against the FDIC while the failed bank is under receivership. This contention is quixotic. The language of the statute precludes such an interpretation: the challenged provision explicitly applies to any act or omission of the failed financial institution. See 12 U.S.C. § 1821(d)(13)(D)(ii).

There is, moreover, no principled basis for the plaintiffs' implication that the jurisdictional bar exists only during the currency of a receivership. Our cases leave no doubt that such a circumscription does not exist. See, e.g., Royal Car Rental, Inc. v. Banco Popular de P.R., No. 12-2131, 2013 WL 2278613, at *2 (1st Cir. May 24, 2013) (per curiam) (applying FIRREA's jurisdictional bar post-receivership); Acosta-Ramírez, 712 F.3d at 18-20 (same).

This brings us to the plaintiffs' second proposed escape hatch: their ipse dixit that FIRREA's exhaustion requirement applies only to creditors' claims and not to consumer claims. Once again, the language of the relevant statutory provision compels us to reject the plaintiffs' proposed limitation.

FIRREA explicitly bars jurisdiction over "<u>any</u> claim relating to <u>any</u> act or omission" of the failed financial institution. 12 U.S.C. § 1821(d)(13)(D)(ii) (emphasis supplied). We have given this provision the full scope that its text demands and, in doing so, we have not limited it to creditors' claims. <u>See</u>, <u>e.g.</u>, <u>Simon</u>, 48 F.3d at 56-57 (enforcing jurisdictional bar when parties asserting a defense to a contingent loan guaranty failed to comply with FIRREA's claims-processing regime); <u>Lloyd</u> v. <u>FDIC</u>, 22 F.3d 335, 337 (1st Cir. 1994) (holding that a mortgagor's complaints "lie in the maw of" section 1821(d)(13)(D)). It is, therefore, unsurprising that the only court of appeals to have squarely addressed the relatively novel proposition advanced by the plaintiffs has held — as we hold today — that FIRREA's jurisdictional bar applies unreservedly to consumer protection claims. <u>See</u> <u>Tellado</u> v. <u>IndyMac Mortg. Servs.</u>, 707 F.3d 275, 279-81 (3d Cir. 2013).

The Tenth Circuit's decision in <u>Homeland Stores, Inc.</u> v. <u>Resolution Trust Corp.</u>, 17 F.3d 1269 (10th Cir. 1994), much bruited by the plaintiffs, is not to the contrary. The <u>Homeland</u> court held

-9-

that claims arising from the post-receivership management of assets — that is, actions taken pursuant to the FDIC's conservator powers — are not subject to FIRREA's jurisdictional bar. Id. at 1275. This holding, as to which we take no view, does not help the plaintiffs because their claims arise exclusively from pre-receivership conduct of the failed financial institution.

The plaintiffs make a further attempt to execute an end run around the sweeping language of FIRREA's jurisdictional bar. This attempted end run rests on 12 U.S.C. § 1821(d)(10). But this specialized provision deals with the payment of claims (not the filing of claims) and specifically references "creditor claims." It is, however, wholly separate from the jurisdictional bar erected by section 1821(d)(13)(D). Consequently, the plaintiffs' reliance on the specialized payment-of-claims provision is misplaced.[2]

Third — and finally — the plaintiffs argue that they should be excused from FIRREA's exhaustion requirement because they

---

[2] Indeed, the inclusion of the specific term "creditor" in section 1821(d)(10) and its omission from section 1821(d)(13)(D)(ii) cuts against the plaintiffs' position. See, e.g., Citizens Awareness Network, Inc. v. United States, 391 F.3d 338, 346 (1st Cir. 2004) ("The principle is clear that Congress's use of differential language in various sections of the same statute is presumed to be intentional and deserves interpretive weight."). As we have said, "[i]t is an orthodox tenet of statutory construction that where Congress includes particular language in one section of a statute, but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." In re 229 Main St. Ltd. P'ship, 262 F.3d 1, 5-6 (1st Cir. 2001) (internal quotation marks omitted).

were never notified of their opportunity to file claims.  But this argument is raised for the first time on appeal, and the attempt to raise it runs headlong into one of the mainstays of the catechism of appellate practice: "If any principle is settled in this circuit, it is that, absent the most extraordinary circumstances, legal theories not raised squarely in the lower court cannot be broached for the first time on appeal."  Teamsters, Chauffeurs, Warehousemen & Helpers Union, Local No. 59 v. Superline Transp. Co., 953 F.2d 17, 21 (1st Cir. 1992).  No extraordinary circumstances sufficient to warrant disregarding this important principle exist here.

At any rate, the summary judgment record contains no evidentiary support for the plaintiffs' belated contention that they were unaware of the need to file an administrative claim.  It is elementary that a "non-moving party must point to facts memorialized by materials of evidentiary quality and reasonable inferences therefrom to forestall the entry of summary judgment." Certain Interested Underwriters at Lloyd's v. Stolberg, 680 F.3d 61, 65 (1st Cir. 2012).  This infirmity may be a direct result of the plaintiffs' failure to raise the argument below; but whatever the cause, the infirmity is terminal.

In any event, the argument lacks force.  FIRREA only requires that the FDIC mail notice to known creditors or claimants, see 12 U.S.C. § 1821(d)(3)(C), and the plaintiffs' claims were not

-11-

advanced until well after Downey Savings failed.  Thus, they could not have been known to the FDIC at the time of receivership. Notice was given by publication, and notice by publication is sufficient for inchoate claims.  See, e.g., Freeman v. FDIC, 56 F.3d 1394, 1402 (D.C. Cir. 1995); Meliezer v. Resolution Trust Co., 952 F.2d 879, 882-83 (5th Cir. 1992); cf. Tellado, 707 F.3d at 281 (holding that "[t]he fact that the deadline for bringing a claim through the administrative process may have passed" does not preclude the application of FIRREA's jurisdictional bar).

We add, moreover, that once an inchoate claim materializes, FIRREA creates a pathway for the holder of such a claim to introduce it into the claims-processing regime.  See 12 U.S.C. §§ 1821(d)(5)(A)(ii), (C)(ii).  The plaintiffs have not tried to invoke this remedy.

There is one loose end.  A recent decision of the Massachusetts Supreme Judicial Court (SJC) cited by the plaintiffs at oral argument held that when a high-cost mortgage loan is assigned, the assignee bank is liable for "all affirmative claims and defenses."  Drakopoulos v. U.S. Bank Nat'l Ass'n, ___ N.E.2d ___, ___ (Mass. 2013) (2013 WL 3470485, at *3 & n.11) (citing Mass. Gen. Laws ch. 183C, § 15(a)).  "[A]ll affirmative claims," the SJC determined, includes not only those brought under the Predatory Home Loan Practices Act but also other consumer protection statutes.  Id.  This determination of successor liability has no

bearing for us because here, unlike in <u>Drakopoulos</u>, U.S. Bank acquired the mortgage by way of the powers vested in the FDIC under FIRREA. Thus, the plaintiffs' claims are subject to FIRREA's statutory scheme, specifically the claims-processing requirements and corresponding jurisdictional bar. <u>See</u> 12 U.S.C. § 1821(d)(13)(D). The plaintiffs do not assert any independent claim against U.S. Bank for <u>its</u> actions.

That ends this aspect of the matter. We hold, without serious question, that FIRREA's exhaustion requirement applies four-square to the plaintiffs' consumer protection claims. It follows inexorably that the plaintiffs' failure to file those claims with the FDIC divested the district court of subject-matter jurisdiction. Consequently, the claims were appropriately jettisoned.

## B.  **The Remaining Claim**.

We proceed to the plaintiffs' remaining claim: that the foreclosure sale was unlawful because U.S. Bank did not possess a written assignment of the mortgage at the time of foreclosure (and, thus, could not validly exercise the power of sale contained in the mortgage). The plaintiffs base this claim on the strictures of a state statute requiring transfers of interests in land to be in writing. <u>See</u> Mass. Gen. Laws ch. 183, § 3. This statute, as interpreted by the SJC, applies to assignments of mortgages on real

property.  See U.S. Bank Nat'l Ass'n v. Ibañez, 941 N.E.2d 40, 51-54 (Mass. 2011).

We pause at the threshold to make clear that this claim is not moot.  The consummation of the foreclosure sale does not render the claim moot because the plaintiffs' complaint, in part, prays for money damages as a means of ameliorating the asserted wrong.  See Culhane v. Aurora Loan Servs. of Neb., 708 F.3d 282, 290 (1st Cir. 2013).  We turn, therefore, to the merits of the claim.

The FDIC, as a matter of federal law, succeeded to the assets of Downey Savings as receiver.  See 12 U.S.C. § 1821(d)(2)(A).  Acting in that capacity, the FDIC was empowered by federal law to "transfer any asset or liability of [the failed bank] . . . without any approval, assignment, or consent with respect to such transfer."  Id. § 1821(d)(2)(G)(i)(II).  The plaintiffs do not contest that the FDIC, pursuant to this authority, transferred all of Downey Savings' mortgages and loans (including the mortgage and loan at issue here) to U.S. Bank.

The plaintiffs argue that these circumstances are not enough to permit U.S. Bank to exercise a power-of-sale provision in a transferred mortgage.  They point out that the property is in Massachusetts and that Massachusetts law requires a specific written assignment of a real estate mortgage.  See Ibañez, 941 N.E.2d at 51-53.  This argument is all sizzle and no steak.

-14-

The plaintiffs' mortgage was assigned to U.S. Bank by operation of federal law, which specifically authorizes the FDIC to transfer assets of a failed financial institution "without . . . assignment." 12 U.S.C. § 1821(d)(2)(G)(i)(II). To demand anything beyond what is spelled out in FIRREA's statutory scheme would require us to turn the Supremacy Clause, U.S. Const. art. VI, cl. 2, upside down. We hold that a transfer of a mortgage, authorized by federal law, obviates the need for the specific written assignment that state law would otherwise require. Accordingly, the district court did not err in granting summary judgment on this claim.

## III. CONCLUSION

We need go no further. For the reasons elucidated above, the judgment of the district court is affirmed.

**Affirmed**.