RUBIN, J.
The plaintiffs, H. Christopher Starkey and Louisa H. Starkey, entered into a mortgage loan transaction in which they executed a promissory note in favor of Washington Mutual Bank, FA (Washington Mutual), as lender and payee in the amount of $1,000,000, on November 22, 2005, and gave Washington Mutual a mortgage on their residential real property in South Yarmouth. The plaintiffs ultimately fell behind on their mortgage payments. On May 14, 2009, Deutsche Bank National Trust Company (Deutsche Bank), as trustee for WaMu Mortgage Pass Through Certificates Series 2006-AR1 Trust (trust), brought a "Complaint to Foreclose Mortgage" against the plaintiffs under the Servicemembers Civil Relief Act, as a final step prior to initiating the process of foreclosure through publication. On June 10 and June 15, 2009, the plaintiffs sent "Notice[s] of Rescission" to Deutsche Bank as trustee of the trust, in which they claimed the right to rescind the November 22, 2005, transactions. After receiving no response, they filed their November, 2009, complaint in the instant action in Superior Court, naming as defendants Deutsche Bank, as trustee for the trust; JPMorgan Chase Bank, N.A. (JPMorgan Chase), successor in interest to Washington Mutual; and other entities related to JPMorgan Chase or Washington Mutual. The plaintiffs sought declaratory relief, damages, and rescission of the mortgage and note, alleging that the defendants have no enforceable rights with respect to the mortgage and note due to their failure to properly convey these assets into the trust *1110 (count 1), that the note and mortgage were obtained without disclosures mandated by G. L. c. 140D (count 2), that the plaintiffs were fraudulently induced to sign the mortgage and note (count 3), that the defendants breached their contract with the plaintiffs by refusing to allow the plaintiffs to rescind the mortgage loan (count 4), that the defendants violated the Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601 - 2617 (2006) (count 5), that the defendants violated the consumer protection statute, G. L. c. 93A (count 6), and that the defendants violated the borrower's interest statute, G. L. c. 183, § 28C (a ) (count 7).
The defendants filed motions to dismiss in January, 2010. In their memoranda in support of the motions to dismiss, the defendants did not raise any argument that dismissal was required by the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 (FIRREA), Pub. L. 101-73, 103 Stat. 183, the relevant portions of which are codified at 12 U.S.C. § 1821(c) - (l) (2006). However, at argument on the motions, without prior notice to the plaintiffs, the defendants presented the judge with a copy of Demelo v. U.S. Bank Nat'l Ass'n, 727 F.3d 117 (1st Cir. 2013), and argued that FIRREA, as construed by Demelo, required dismissal of the suit.
The motion judge ordered the dismissal of all but one claim in the complaint -- count 5 as against JPMorgan Chase -- solely on the basis of FIRREA. At the first opportunity to address that statute, after the decision was rendered, the plaintiffs filed a motion for reconsideration, arguing the inapplicability of FIRREA. That motion was denied the same day it was filed. Eventually the remaining count 5 claim was resolved by mutual agreement and dismissed by separate judgment. A second judgment then entered dismissing counts 1 through 4, 6, and 7, on the basis of FIRREA. Before us now is the plaintiffs' timely appeal from that judgment (as corrected to remedy a clerical mistake).
On appeal the only issue before us is whether FIRREA requires dismissal of these counts. In light of the procedural history described, we think the plaintiffs' arguments were adequately raised below.[4] Additional relevant facts will be described in the course of our discussion below.
Analysis. On September 25, 2008, Washington Mutual Bank, formerly Washington Mutual Bank, FA,[5] was declared insolvent and placed into receivership of the Federal Deposit Insurance Corporation (FDIC). See Thompson v. Washington Mut., 806 F.Supp.2d 197, 199 (D.D.C. 2011). Its assets were immediately sold to defendant JPMorgan Chase. FIRREA sets forth a claims procedure that requires creditors of failed banks to file claims with the FDIC, and divests courts of jurisdiction to hear these claims against these banks, or the FDIC as receiver, until administrative remedies with the FDIC have been exhausted. Specifically, the statute provides,
"Except as provided in this subsection, no court shall have jurisdiction over--
"(i) any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the Corporation [i.e., the FDIC] has been appointed receiver, including assets which the Corporation may acquire from itself as such receiver; or
"(ii) any claim relating to any act or omission of such institution or the Corporation as receiver."
*1111 12 U.S.C. § 1821(d)(13)(D). The defendants argue that the statute bars the plaintiffs' claims because it eliminates the trial court's jurisdiction, and that the plaintiffs are remitted to the claim procedure set forth in FIRREA, under which the deadline for filing claims has now passed. See Alkasabi v. Washington Mut. Bank, F.A., 31 F.Supp.3d 101, 104 (D.D.C. 2014) (FDIC set December 30, 2008, as deadline for filing claims against the Washington Mutual receivership).
Procedural setting. As an initial matter, in their complaint, the plaintiffs alleged that their mortgage was "apparently" held by "Washington Mutual, Inc., or one of its subsidiaries" on the date of Washington Mutual's insolvency. They alleged that they were not informed that anyone other than the original mortgagee, Washington Mutual, held their mortgage loan prior to their receipt of the trust's Complaint to Foreclose Mortgage. The notion that the mortgage loan was held by Washington Mutual on the date of its placement in receivership (September 25, 2008) was certainly a reasonable inference, since, three days before bringing the May 14, 2009, Complaint to Foreclose Mortgage, the trust was purportedly assigned the mortgage by JPMorgan Chase. The assignment was signed by Barbara Hindman, vice-president of JPMorgan Chase, recorded in the Barnstable Registry of Deeds on May 20, 2009, and accompanied by an affidavit by the FDIC stating that JPMorgan Chase came to own all of Washington Mutual's "loans and loan commitments" on September 25, 2008.
Although the memoranda in support of the defendants' motions to dismiss, filed by a single attorney purporting to represent all the defendants, including JPMorgan Chase and the trust, did nothing to clarify the question of who owned the note and the mortgage at what times, the plaintiffs did append to an opposition memorandum a copy of the "Pooling and Servicing Agreement" (PSA), an agreement between WaMu Asset Acceptance Corp. as depositor of a set of assets (primarily mortgage loans), Washington Mutual Bank as servicer of those loans, Deutsche Bank as trustee of the trust, and Deutsche Bank Trust Company Delaware as Delaware trustee. Its inclusion suggests that the mortgage was securitized and sold to the trust long before Washington Mutual's insolvency. That document reveals that the trust obtained all its assets through a purchase from WaMu Asset Acceptance Corp., the set of assets being valued at over $1.5 billion. The PSA states that those assets include "Mortgage Loans" that would be conveyed to the trust on the closing date, January 30, 2006. "Mortgage Loan[ ]" is relevantly defined to include both the note and the mortgage. According to the PSA, the "Mortgage Files," which include the mortgage notes and recorded mortgages, endorsed or assigned respectively either in blank, to the trust, or to the trustee, were also to be delivered to the trust on January 30, 2006. The trust then issued a variety of classes of "certificates," each representing a fractional ownership interest in the bundle of Mortgage Loans that made up the trust assets, and the certificates were subsequently sold on the open market. The PSA appears to make no provision, and appears to grant the trust no authority, for acquisition of additional assets by the trust subsequent to the closing date.
Arguing that FIRREA bars the plaintiffs' claims if the mortgage was owned by Washington Mutual on the date of its placement in receivership, the defendants now contend that because the plaintiffs, understandably in light of the defendants' own conduct, pleaded that the mortgage was "apparently" owned by Washington *1112 Mutual on that date, the plaintiffs have "pled themselves out of court."
At this stage in the proceedings, however, we need not determine what claims or actions might be barred by FIRREA with respect to assets owned by Washington Mutual on the date it went into receivership. That is because the judge, appropriately, considered the PSA in ruling on the motions to dismiss, specifically concluding that "[t]he mortgage was quickly packaged into a security sold to Deutsche Bank." The judge thus implicitly treated the motions as ones for summary judgment under Mass. R. Civ. P. 56, 365 Mass. 824 (1974), rather than as motions to dismiss under Mass. R. Civ. P. 12 (b) (6), 365 Mass. 754 (1974). See Mass. R. Civ. P. 12 (b) ("If, on any motion asserting the defense numbered [6], to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment ..."). Accord Cousineau v. Laramee, 388 Mass. 859, 860 n.2, 448 N.E.2d 756 (1983) (trial judge who relies on factual matters outside the pleadings in deciding a rule 12 [b] [6] motion implicitly converts that motion into one for summary judgment).
On appeal, we therefore do the same . Our review is de novo. Bulwer v. Mount Auburn Hosp., 473 Mass. 672, 680, 46 N.E.3d 24 (2016). Drawing every inference from the record in favor of the nonmoving parties, the plaintiffs, we must determine whether there is any genuine issue of material fact and whether, as a matter of law, the defendants are entitled to judgment. Id. See Miller v. Cotter, 448 Mass. 671, 676, 863 N.E.2d 537 (2007).
Discussion. As our description of the proceedings below suggests, there is, at least, a genuine issue of fact with respect to the ownership of the plaintiffs' mortgage loan in 2008. If, as the PSA suggests, the note and the mortgage were sold to the trust in 2006, they were no longer assets of Washington Mutual on the day it went into receivership. Both the note and the mortgage would have been the property of the trust since 2006, notwithstanding the transfer document recorded in May, 2009.
In a suit against a purchaser of a loan from a depository institution that later became insolvent and went into receivership of the FDIC, the first clause of 12 U.S.C. § 1821(d)(13)(D) is inapplicable. Such a suit does not seek "payment from, or ... a determination of rights with respect to, the assets of any depository institution for which the [FDIC] has been appointed receiver." The question before us is whether such a suit is barred by the second clause, eliminating jurisdiction over "any claim relating to any act or omission of such institution or the [FDIC] as receiver." 12 U.S.C. § 1821(d)(13)(D)(ii).
"In FIRREA, the word 'claim' is a term-of-art that refers only to claims that are resolvable through the FIRREA administrative process, and the only claims that are resolvable through the administrative process are claims against a depository institution for which the FDIC is receiver." American Nat'l Ins. Co. v. Federal Deposit Ins. Corp., 642 F.3d 1137, 1142 (D.C. Cir. 2011). This understanding of the scope of the word "claim" accords with the purposes of FIRREA, which are "to ensure that the assets of a failed institution are distributed fairly and promptly among those with valid claims against the institution, and to expeditiously wind up the affairs of failed banks." McCarthy v. Federal Deposit Ins. Corp., 348 F.3d 1075, 1079 (9th Cir. 2003), quoting Freeman v. Federal Deposit Ins. Corp., 56 F.3d 1394, 1401 (D.C. Cir. 1995). See *1113 Marquis v. Federal Deposit Ins. Corp., 965 F.2d 1148, 1154 (1st Cir. 1992) ("FIRREA was designed to create an efficient administrative protocol for processing claims against failed banks"); Rosa v. Resolution Trust Corp., 938 F.2d 383, 396 (3d Cir. 1991) (purpose of FIRREA's administrative procedure is to "quickly and efficiently resolve claims against a failed institution without resorting to litigation").
Courts have required the use of the administrative claims procedure for claims against third-party banks that purchased the assets of the failed bank from the FDIC as receiver and assumed its rights and/or liabilities from the FDIC -- the purchasing bank in this case is JPMorgan Chase -- when those claims are "functionally," if not "formally," against the failed bank. See, e.g., Tellado v. IndyMac Mtge. Servs., 707 F.3d 275, 280-281 (3d Cir. 2013) ; Benson v. JPMorgan Chase Bank, N.A., 673 F.3d 1207, 1214 (9th Cir. 2012) ; Aber-Shukofsky v. JPMorgan Chase & Co., 755 F.Supp.2d 441, 448 (E.D.N.Y. 2010). In those cases, the suit was functionally against the failed bank because the purchasing bank held, at the time of the suit, the assets that the FIRREA claims process was designed to distribute, and a contrary rule would allow plaintiffs to circumvent the required process simply by naming the purchasing bank rather than the failed bank as the defendant. See, e.g., American Nat'l Ins. Co., supra at 1144, ; Benson, supra at 1214,. This was the case with the defendant bank in Demelo v. U.S. Bank Nat'l Ass'n, 727 F.3d 117 (1st Cir. 2013), relied on by the defendants here.[6]
Consistent with the purposes of the statute, though, in Demelo the United States Court of Appeals for the First Circuit implied that the FIRREA bar applies only to holders of mortgages originally issued by the failed bank when those mortgages were "acquired ... by way of the powers vested in the FDIC under FIRREA." Id. at 124. See American First Fed., Inc. v. Lake Forest Park, Inc., 198 F.3d 1259, 1263 n.3 (11th Cir. 1999) ("[The bank], having purchased the note from the [FDIC], stands in the shoes of the [FDIC] and acquires its protected status under FIRREA"). In other circumstances, the assignee will have whatever "successor liability" comes with the assigned mortgage. Demelo, supra. This is the approach taken by the United States Court of Appeals for the Second Circuit in Bank of N.Y. v. First Millennium, Inc., 607 F.3d 905 (2d Cir. 2010). In that case, a trust created by a bank, NextBank, purchased some assets from NextBank before it failed. The trust then issued notes backed by proceeds from the assets, which notes it subsequently sold. After NextBank failed, the FDIC and various noteholders each claimed the right to certain proceeds -- the noteholders under the notes, and the FDIC as receiver for the trust's creator. The trust interpleaded the FDIC and the noteholders to resolve the dispute. Id. at 908-910. The FDIC argued that the case was barred by FIRREA. Id. at 920. The Second Circuit rejected this argument because, although it concluded the case involved claims related to an "act or omission" of the FDIC, the claims at issue were only against the solvent trust -- not against the failed bank or the FDIC as receiver. Since such claims could not have been brought under the administrative procedures of 12 U.S.C. § 1821(d), FIRREA did not bar them:
"This interpleader ... is not an administrative claim, nor could it have been one. The noteholders are not creditors of NextBank, and they assert no claims against either that failed institution or against the FDIC. They hold notes issued *1114 by the trust, an independent and still solvent entity. Accordingly, since they assert no claims against the FDIC as receiver for NextBank, they are not bound by the jurisdictional limitations or other procedural requirements of § 1821(d).
"While the plain language of ... § 1821(d)(13)(D)(ii) [ ] may initially appear helpful to the FDIC's argument, closer examination reveals it to be irrelevant. Section 1821(d)(13)(D)(ii) states: '[e]xcept as otherwise provided in this subsection, no court shall have jurisdiction over ... any claim relating to any act or omission of [an] institution [in receivership] or the
[FDIC] as receiver.' Read out of context, this provision may seem to deprive courts of jurisdiction over any claim involving the FDIC's 'act or omission,' even a claim not directly against the FDIC. Such an interpretation would be erroneous. This provision is not an isolated edict, but is part of FIRREA's statutory scheme, which was intended to force plaintiffs with claims against failed depository institutions to exhaust administrative remedies before coming to [F]ederal court. Carlyle Towers [Condominium Ass'n, Inc. v. Federal Deposit Ins. Corp.], 170 F.3d [301,] 307 [ (2d Cir. 1999) ]. Courts interpreting the broad language of § 1821(d)(13)(D)(ii) have universally concluded that this provision bars only claims that could be brought under the administrative procedures of § 1821(d), not any claim at all involving the FDIC. See Auction Co. of Am. v. FDIC, 141 F.3d 1198, 1201 (D.C. Cir. 1998) (holding that § 1821 [d][13][D][ii] grants the FDIC immunity only from claims that can be brought through the administrative processes of § 1821 [d] ); Hudson United Bank v. Chase Manhattan Bank of Conn., N.A., 43 F.3d 843, 849 (3d Cir. 1994) ('The purpose [of FIRREA] was not to immunize certain claims from review.'). We agree with their conclusion. Accordingly, since the noteholders assert no claim against either the FDIC or NextBank, and since they are not compelled to comply with the administrative procedures of § 1821(d), § 1821(d)(13)(D)(ii) [does not] bar[ ] their claims ...."
Bank of N.Y., supra at 920-921,.
We find that reading of FIRREA persuasive. And indeed, although the reasoning of various courts in construing this provision of FIRREA varies, we are aware of no case in which a court has held that FIRREA eliminates jurisdiction over a claim such as this -- against a solvent third party that is not the failed bank, the FDIC, or a successor that obtained assets of the failed bank from the FDIC -- for either money damages that the third party will be required itself to pay, or for declaratory or injunctive relief.[7] Except to the *1115 extent, if any, that the plaintiffs seek money damages from Washington Mutual, or arguably JPMorgan Chase as the bank that assumed its rights and/or liabilities from the FDIC, then, we conclude their claims are not barred by FIRREA. To the extent there exists any dispute by the defendants about the ownership of the note or the mortgage on the date Washington Mutual went into receivership -- and we note that date of preparation or recordation of a mortgage transfer does not necessarily indicate that that is the date on which ownership of the mortgage was in fact transferred to a purchaser -- the plaintiffs are entitled to further discovery on the matter.
The plaintiffs also argue that, even if the mortgage loan was owned by Washington Mutual on the date of receivership or FIRREA otherwise applied, some or all of their claims would survive because they do not fall within the language of the statute as properly construed, in particular because declaratory judgments and affirmative defenses do not fall under FIRREA's definition of "claim." See Bolduc v. Beal Bank, SSB, 167 F.3d 667, 671-672 (1st Cir. 1999) (preemptive assertion of affirmative defense to foreclosure action not barred by FIRREA). See also, e.g., Beaton v. Land Court, 367 Mass. 385, 392, 326 N.E.2d 302 (1975) (fraud is defense to foreclosure). In light of our holding, and the fact that the motion judge was presented with the FIRREA argument only at the hearing on the motions to dismiss, so that these issues were not fully briefed before the motions were initially decided, we think the prudent course is to allow the Superior Court to address these issues on remand in the first instance, should it become necessary.[8]
The corrected judgment is reversed and the case is remanded to the Superior Court for further proceedings consistent with this opinion.
So ordered.

The plaintiffs also raise a constitutional argument that, in light of our disposition of this case, it is unnecessary to address.

We treat these entities as the same for simplicity.

We note that the record before us contains no evidence as to JPMorgan Chase's assumption of Washington Mutual's or the FDIC's liabilities.

Our conclusion is not inconsistent with the recent decision in Willner v. Dimon, 849 F.3d 93 (4th Cir. 2017), on which the defendants would rely, but which they read for more than it is worth. Although the court in Willner held that the language in 12 U.S.C. § 1821(d)(13)(D)(ii) is broad enough to encompass certain claims brought against third parties (i.e., not the failed bank, the FDIC, or a successor that obtained assets of the failed bank from the FDIC) based on the acts or omissions of the failed bank or the FDIC, id. at 105, its holding was limited to claims that could have been brought in an administrative proceeding under the statute and that, if found meritorious, would have been paid by the FDIC, not the third party itself. Indeed, after concluding that claims were not automatically excepted from the FIRREA bar because brought against third parties, the court went on to say that, regardless of that conclusion, "[c]ourts interpreting ... § 1821(d)(13)(D)(ii) have universally concluded that [it] bars only claims that could be brought under the administrative procedures of § 1821(d)." Id. at 105-106, quoting Bank of N.Y., 607 F.3d at 921. The Willner court then went on to assess whether claims against a solvent third party that had purchased a mortgage prior to a failed bank's insolvency could be brought under that procedure; the plaintiffs argued that the FDIC could not order a remedy against that third party and that, therefore, the claims could not have been brought under the FIRREA administrative procedure.
The court held that FIRREA applied, but only because the money damages claim was "functionally" against the failed bank and "upon receiving a timely and meritorious claim for damages, the FDIC can resolve it by making a payment to the claimant." Id. at 108. It did not address whether a money-damages claim that would be paid by the third party, not the FDIC, would be barred by the statute. Likewise, it explicitly declined to determine whether the claims procedure could be used to issue a declaratory judgment binding against the third party. Id. at 108-109.

The same course should be taken with respect to surviving claims, if any, pressed by the plaintiffs for money damages against Washington Mutual or JPMorgan Chase as purchaser of its assets from the FDIC.